UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACADIA DELIVERY SERVICE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 20-10370-LTS |
| | ) |
| FEDEX GROUND PACKAGE | ) |
| SYSTEM, INC., | ) |
| | ) |
| Defendant. | ) |

ORDER ON DEFENDANT FEDEX GROUND PACKAGE SYSTEM INC.'S
MOTION TO DISMISS (DOC. NO. 29)

March 19, 2021

SOROKIN, J.

Plaintiff Acadia Delivery Service, Inc. ("Acadia") sued Defendant FedEx Ground

Package System, Inc. ("FedEx"), alleging breach of contract, promissory estoppel, and violations

of M.G.L. c. 93A. Doc. No. 27.[1] FedEx filed a Motion to Dismiss, Doc. No. 29, Acadia opposed,

Doc. No. 35, and FedEx replied, Doc. No. 38. For the reasons that follow, FedEx's Motion to

Dismiss is DENIED.

## I.   FACTS

FedEx operates a package delivery network. Doc. No. 27 at 1. Independent corporations

provide pick-up and delivery services for FedEx pursuant to contracts known as Independent

Service Provider ("ISP") agreements. Id. A service provider may propose to assign its ISP rights

to a third party, subject to FedEx's right to consent to the proposed assignment. Id.

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing
system; pincites are to the page numbers in the ECF header.

In July 2017, WFM Trucking, Inc. ("WFM"), a service provider for the FedEx terminal in Natick, Massachusetts, approached Acadia about the possibility of transferring the WFM ISP agreement to Acadia. Id. ¶ 3–4. The parties could not reach a deal, and WFM looked for other buyers. Id. ¶ 6.

In September 2017, FedEx (via Tom Penner, senior manager at the Natick FedEx terminal) contacted Acadia and "offered Acadia the opportunity to acquire the WFM ISP provided that Acadia could reach a deal with WFM." Id. ¶ 7. That same month, Acadia "reached a framework deal with WFM, by which Acadia would take over operations of WFM on October 1, 2017, with the consent and approval" of FedEx. Id. ¶ 8.

On October 2, 2017, Acadia and WFM met with FedEx at the Natick terminal. Id. ¶ 8. Acadia alleges the following events:

> At that meeting, WFM agreed to sell its interests to Acadia, WFM agreed to allow Acadia to manage the WFM ISP until the final transfer and FedEx approved Acadia for the transfer and agreed to commence the transfer process, and FedEx required Acadia to manage WFM until the transfer was completed.

Id. Acadia alleges that this meeting "formed the written contract between Acadia and WFM and the oral contract between Acadia and FedEx." Id.

Based on FedEx's representation at this meeting, Acadia expected "to acquire the WFM ISP for purposes of running the ISP, restoring its viability and finding a ready, willing and able buyer for the ISP for Acadia and FedEx's benefit." Id. ¶ 9. Acadia then fronted a substantial amount of money to assist WFM in terminating a prior agreement and to revitalize the ISP. Id. ¶ 10. Acadia alleges that FedEx knew that Acadia would be investing substantial funds in the WFM ISP because FedEx was provided a copy of the Management and Purchase Agreement between WFM and Acadia, which stated that Acadia "shall provide the funds necessary for payment of such obligations." Id. ¶ 16. Acadia remained in constant communication with FedEx

to resolve various issues relating to the WFM ISP's operation, and Acadia alleges that emails between Acadia and FedEx over the subsequent months establish that both parties commenced performance of their obligations geared towards revitalizing the WFM ISP routes and transferring ownership to Acadia. Id. ¶¶ 11, 15, 18, 20–32.

In September 2018, Penner was replaced with a new FedEx terminal manager. See id. ¶ 33. Later that month, the new manager "informed WFM, but not Acadia, that he was withhold[ing] final contractual approve of the transfer." Id. ¶ 38. At this point, Acadia alleges it had invested over $135,000 of its own capital into the ISP to revitalize and restore it, and that it had performed its contractual obligations and was entitled to completion of the final phase (resale of the revitalized ISP). Id. ¶ 40. Acadia claims that FedEx's conduct breached the oral contract between the parties.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must also "set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). Courts must "take all factual allegations [in the Complaint] as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007).

## III. DISCUSSION

### A. Breach of Oral Contract (Count I)

Acadia first alleges that FedEx breached an oral contract to approve the transfer or assignment of the ISP from WFM to Acadia. Doc. No. 27 ¶¶ 8, 56. FedEx argues that the claim should be dismissed because the alleged oral contract lacks definiteness, or alternatively the claim is barred by the Statute of Frauds. Doc. No. 30 at 6–9.

"Oral contracts are as enforceable as written contracts so long as they are not barred by the Statute of Frauds." Brewster Wallcovering Co. v. Blue Mt. Wallcoverings, Inc., 864 N.E.2d 518, 534 n.40 (Mass. App. Ct. 2007). To adequately plead a breach of a contract claim under Massachusetts law, a plaintiff need only allege "that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016).

Acadia alleges that FedEx represented that if Acadia and WFM could reach an agreement, FedEx would approve the transfer of the WFM ISP to Acadia, and that on October 2, 2017, FedEx orally "approved Acadia for the transfer and agreed to commence the transfer process." Doc. No 27 ¶¶ 7–8. Acadia alleges that it provided consideration for FedEx's promise through a cash infusion to the WFM ISP and investing in turnaround operations. Id. ¶ 55. Acadia further alleges that FedEx breached the agreement when it failed to engage in the act of completing the transfer of the ISP and failed to compensate Acadia for its services. Id. ¶¶ 56–57. Finally, Acadia alleges that as a result of the breach, it suffered loss of its capital investment and lost profits on the restoration and sale of the business, among other damages. Id. ¶ 58.

4

Accordingly, Acadia has sufficiently pleaded all the elements of a breach of oral contract claim, including the terms of the contract with sufficient definiteness.

Further, the Statue of Frauds does not warrant dismissal of Acadia's claim. Under Massachusetts law, the Statute of Frauds, Mass. Gen. Laws ch. 259 § 1, requires that any contract that cannot be fully performed within one year of its making be reduced to writing to be enforceable. This provision "applies only to contracts which by their terms cannot be performed within the year. It does not apply to contracts which may be performed within, although they may also extend beyond, that period." Doherty v. Doherty Ins. Agency, Inc., 878 F.2d 546, 551 (1st Cir. 1989) (quoting Rowland v. Hackel, 137 N.E. 265, 265 (Mass. 1922)). "[A]ny understanding that [a contract] was not to be performed within a year is to be absolute and certain, and not to depend on any contingency." Joseph Martin, Inc. v. McNulty, 16 N.E.2d 4, 6 (Mass. 1938) (internal citation omitted).

FedEx argues that the Statute of Frauds bars this claim because "[t]he term of the [ISP agreement] that FedEx Ground allegedly approved to be transferred from WFM to Acadia ran through May 10, 2019, which is more than a year-and-a-half from the date of the alleged oral contract." Doc. No. 30 at 7. However, Acadia does not allege that FedEx breached the ISP agreement itself. Acadia alleges that FedEx breached its agreement to transfer the ISP from WFM to Acadia. See Doc. No. 27 ¶ 56 (alleging that FedEx breached by "failing to engage in the specific acts of completing [the] transfer"). The Amended Complaint is devoid of any allegations that the parties had any "absolute and certain" understanding that the transfer could not be performed within a year. At this stage, the Court cannot determine the applicability of the statute of frauds. Cf. Moog, Inc. v. ClearMotion, Inc., No. 1:19-CV-12066-IT, 2020 WL 6162921, at *5 (D. Mass. Oct. 21, 2020) (on motion to dismiss, where complaint "is silent as to the time period

of performance, and it cannot be readily determined whether the alleged agreements could be performed within one year, the court cannot assess whether the oral contract would come within the parameters of the Statute of Frauds"). For these reasons, Count I states a claim and FedEx's motion is denied as to this count. Any argument that the Amended Complaint pleads other contrary facts and that those facts are capable of other constructions is not sufficient at this stage to result in dismissal.

### B.  Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

FedEx only challenges Count II on the grounds that Acadia does not sufficiently allege an oral contract under Count I, but that claim survives. FedEx makes no other argument for dismissal of this claim. Thus, FedEx's motion is denied as to Count II of the Amended Complaint.

### C.  Promissory Estoppel (Count III)

Under Massachusetts law, the elements of promissory estoppel are "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." Bongaards v. Millen, 793 N.E.2d 335, 339 (Mass. 2003).

Acadia alleges: (1) that FedEx represented that it approved the transfer of the WFM ISP to Acadia on October 2, 2017 and communicated with Acadia to commence and support operations, Doc. No. 27 ¶¶ 8, 11, 18; (2) that Acadia spent substantial funds in reliance on that representation, id. ¶¶ 10, 14; and (3) that Acadia suffered financial loss when the contract was breached, id. ¶¶ 52, 71–72. These statements are sufficient to allege a claim for promissory estoppel. FedEx argues that Acadia does not sufficiently allege a specific promise and that Acadia's reliance was unreasonable. Doc. No. 30 at 10–12. Neither argument defeats Acadia's

claim at this stage of the case. Acadia sufficiently alleges that FedEx made a representation—that the transfer was approved. And as the First Circuit has noted, "it is not required that all terms of [an] agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract . . . These provisions of contract law apply equally to promissory estoppel . . .." Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (citing Situation Mgmt. Sys. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000). Further, the question of whether Acadia's reliance was reasonable is generally considered a question of fact and the Court does not consider it at this stage of the litigation. See, e.g., Cataldo Ambulance Serv. v. City of Chelsea, 688 N.E.2d 959, 962 (Mass. 1998). FedEx's motion is denied as to Count III.

### D.  Chapter 93A (Count IV)

Under Chapter 93A § 11, "it is unlawful for those engaged in trade or commerce to employ unfair methods of competition and unfair or deceptive acts or practices in business transactions with others engaged in trade or commerce." Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). While the statute does not define "unfair" or "deceptive," Massachusetts courts have consistently held that "conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." Id. (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 821 (Mass. 1991)). "A mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of 'commercial extortion' or a similar degree of culpable conduct." Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000). However, "a party who breaches a contract in a deliberate attempt to obtain the benefits of the contract, and to avoid fulfilling its own obligations

under it, may have committed an unfair or deceptive act under chapter 93A." <u>Stagikas v. Saxon</u>

<u>Mortg. Servs., Inc.</u>, 795 F. Supp. 2d 129, 137 (D. Mass. 2011).

FedEx argues that Acadia's allegation is nothing more than a simple breach of contract,

which is insufficient to state a claim under Chapter 93A. <u>See</u> Doc. No. 30 at 13 (citing <u>City of</u>

<u>Revere v. Boston/Logan Airport Assocs.</u>, 416 F. Supp. 2d 200, 208–09 (1st Cir. 2005)).

However, Acadia alleges more than a simple breach of contract because it alleges that FedEx

"never had the intent to complete its obligations" under the contract and was "simply using

Acadia to gain unfair benefit to itself." Doc. No. 27 ¶ 76. Acadia essentially claims that FedEx

took steps towards performance, and then willfully committed an about-face at the last minute to

avoid paying Acadia for its efforts to revitalize the WFM routes. <u>Id.</u> ¶¶ 76–79. Under Rule

12(b)(6), Acadia "need do no more than allege conduct that, if proven, could be found to

constitute an unfair or deceptive practice," <u>Aware, Inc. v. Centillium Commc'ns, Inc.</u>, 604 F.

Supp. 2d 306, 312 (D. Mass. 2009). Because Acadia has met this standard, Count IV survives

dismissal as well.[2]

---

[2] FedEx also notes Acadia has failed to comply with the heightened pleading standards of Fed. R.
Civ. P. 9(b). Doc. No. 30 at 14 n.5. Although Plaintiff has not pled a common law fraud claim,
the requirements of Rule 9(b) also apply to 93A claims "where the core allegations effectively
charge fraud." <u>Mulder v. Kohl's Dep't Stores, Inc.</u>, 865 F.3d 17, 21–22 (1st Cir. 2017) (citation
omitted). Plaintiff's 93A claim effectively charges fraud, but the Amended Complaint
sufficiently "state[s] with particularity the circumstances constituting fraud" as required by Rule
9(b) because Plaintiff alleges that on October 2, 2017, FedEx stated that it approved the transfer
of the ISP, Doc. No. 27 ¶ 8, which Plaintiff goes on to allege was an intentional
misrepresentation, <u>id.</u> ¶ 51. Nothing about the Court's resolution to the challenge of the 93A
claim speaks to the strength of the claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendant FedEx's Motion to Dismiss (Doc. No. 29) is

DENIED. The Clerk shall schedule a Rule 16 conference.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge